UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HENRY LEE SHELL, JR., <br><br> Petitioner, <br><br> v. <br><br> WARDEN, <br><br> Respondent. | CAUSE NO.: 3:16-CV-127-RLM-MGG |

OPINION AND ORDER

Henry Lee Shell, Jr. a prisoner without a lawyer, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for dealing in methamphetamine and theft and his fourteen-year sentence by the Miami Circuit Court.

BACKGROUND

A court deciding a habeas petition must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Mr. Shell's burden to rebut this presumption with clear and convincing evidence. *Id.* On appeal from the denial of post-conviction relief, the Indiana Court of Appeals set forth the facts surrounding Mr. Shell's offenses as follows:

Crop Production Services, a Miami County company, requested police assistance regarding theft from its anhydrous ammonia tanks. The Indiana State Police established a surveillance team and posted officers throughout CPS's remotely located facility. There were approximately eight officers involved in this surveillance operation, which included the use of night-vision goggles and thermal imaging.

A little after 1:00 a.m. on January 14, 2010, a pickup truck pulled up to CPS's anhydrous ammonia storage facility, and one person exited the truck. The officers did not see the person, who was wearing Carhartt-type clothing, carrying anything at this time. The person entered the fenced-in yard of the facility, quickly filled a pitcher with anhydrous ammonia, and ran out of the yard. The officers observed vapors rising from both the tank and the pitcher. The person then squatted down by a utility pole, set the pitcher down, and waited for a few minutes. The truck returned, picked up the person, and left. The officers followed and stopped the truck. There were four people inside the truck, including Shell. Shell, however, was the only person wearing Carhartt-type clothing, and an officer smelled a strong odor of anhydrous ammonia on his clothing. In addition, according to one of the occupants of the truck, they dropped off Shell at CPS's anhydrous ammonia storage facility and later returned to get him. Because no anhydrous ammonia was found in the truck, the officers returned to the utility pole where they had seen the person crouching and found the pitcher, which contained anhydrous ammonia and other ingredients used to manufacture methamphetamine, specifically, lithium and pseudoephedrine. The ingredients were in the beginning stages of manufacturing. The contents of the pitcher were later analyzed and determined to contain methamphetamine. *Shell v. State,* No. 52A04–1107–CR–370, 2012 WT 1655164, at*1 (Ind.Ct.App. May 9, 2012), *trans. denied.*

The State charged Shell with Class B felony dealing in methamphetamine (manufacturing) and Class D felony theft. A jury trial was held in May 2011. During the trial, counsel unsuccessfully attempted to suppress all evidence resulting from the stop of the truck in which Shell was riding. Tr. p. 226–31. Also during the trial, Joni Espenschied, who was in the truck, high on methadone, and was arrested with Shell, testified that Shell got out of the truck and, after some time had passed, the truck stopped again to collect Shell from the side of the road. *Id.* at 269. She further testified that Shell was wearing a coat which matched the description given by the officers who observed the anhydrous ammonia theft. *Id.* at 275.

> Shell was convicted as charged. The trial court sentenced Shell to fourteen years for dealing in methamphetamine and three years for theft, to be served concurrently.

Shell v. State, No. 52A04-1107-CR-370, 2012 WL 1655164 (Ind. Ct. App. May 9, 2012); *See also* Shell v. State, 43 N.E.3d 272 (Ind. Ct. App. Dec. 9, 2015) (table); (ECF 4-6; 4-13.)

Mr. Shell argued on appeal that that there was insufficient evidence to support his conviction and that the trial court abused its discretion by refusing to give two jury instructions. The Indiana Court of Appeals affirmed Mr. Shell's conviction and sentence. Shell v. State, 2012 WL 1655164, at *2. The Indiana Supreme Court, denied his petition for transfer.

Mr. Shell filed a petition for post-conviction relief, later amended, in the Miami Circuit Court. (ECF 4-8.) After a hearing, the court denied Mr. Shell's request for post-conviction relief. Mr. Shell appealed, arguing that he was denied the effective assistance of trial and appellate counsel. Shell v. State, 43 N.E.3d 272. Mr. Shell argued that his trial counsel was ineffective because he didn't move to suppress evidence gathered as a result of the stop of the truck and seizures of the pitcher, failed to impeach three different witnesses, and failed to timely tender preliminary jury instructions. Mr. Shell argued that his appellate counsel was ineffective because he didn't argue that the initial stop of the truck and seizure of the pitcher were unconstitutional. The Court of Appeals of Indiana denied Mr. Shell's appeal. *Id.* Mr. Shell sought transfer to the Indiana Supreme Court raising the same issues. The Indiana Supreme Court denied transfer.

Mr. Shell submitted this federal habeas petition challenging his convictions and sentence, arguing that: (1) he was arrested as a result of an unconstitutional search and seizure; (2) he received ineffective assistance of trial and appellate counsel; and (3) the state court proceedings on his post-conviction relief petition violated the Due Process Clause and Equal Protection Clause.

## DISCUSSION

### Procedural Default

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); Lewis v. Sternes, 390 F.3d 1019, 1025 (7th Cir. 2004). The warden argues that procedural default bars two of Mr. Shell's claims from review in federal court. "There are two distinct ways in which a state prisoner can procedurally default a federal claim." Snow v. Pfister, 880 F.3d 857, 864 (7th Cir. 2018). The first occurs in "cases where the state court declines to address a petitioner's federal claims because the petitioner did not meet state procedural requirements." *Id.* When a state procedural requirement hasn't been met, "the state court judgment rests on an independent and adequate state ground and principles of comity and federalism dictate against upending the state-court conviction." Thomas v. Williams, 822 F.3d 378, 384 (7th Cir. 2016) (citing Coleman v. Thompson, 501 U.S. 722, 729–30 (1991)).

The second type of procedural default "stems from the requirement that a state prisoner must exhaust his remedies in state court before seeking relief in

federal court," which requires the petitioner include his claims in "one complete round of the State's established appellate review process." Snow v. Pfister, 880 F.3d at 864 (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). This means "the petitioner must raise the issue at each and every level in the state court system." Lewis v. Sternes, 390 F.3d 1019, 1025 (7th Cir. 2004). A petitioner "who has exhausted his state court remedies without properly asserting his federal claim at each level of state review has procedurally defaulted that claim." *Id.* at 1026.

Mr. Shell challenges the trial court's admission of evidence resulting from the stop of the truck and seizure of the pitcher. Mr. Shell didn't raise these arguments in his direct appeal. Shell v. State, 2012 WL 1655164, at *2. He tried to raise these arguments in his PCR, but the court of appeals declined to consider these arguments as freestanding claims because "[a] defendant in a postconviction proceeding may allege a claim of fundamental error only when asserting either (1) deprivation of the Sixth Amendment right to effective assistance of counsel, or (2) an issue demonstrably unavailable to the petitioner at the time of his or her trial and direct appeal." Shell v. State, 43 N.E.3d 272 at n. 1 (quoting Lindsey v. State, 888 N.E.2d 319, 325 (Ind. Ct. App. 2008) (internal quotations, citations, and brackets omitted). Because the court of appeals disposed of Mr. Shell's argument on an independent state law ground, this court can't review the merits of this argument as a freestanding claim. Like the court of appeals, however, this court will address the arguments in the context of Mr. Shell's ineffective assistance of counsel claims.

5

Mr. Shell also argues in his habeas petition that the state courts deprived him of his rights under the Due Process Clause and Equal Protection Clause by denying his PCR petition. He believes the denial of the petition was an abuse of discretion. The court of appeals found that this ground was waived because Mr. Shell didn't make a cogent argument. Shell v. State, 43 N.E.3d 272 n. 4. The court of appeals also found that this argument appeared to be a derivative of his ineffective assistance claims, which were separately found to lack merit. *Id.* Because Mr. Shell didn't meet a state procedural requirement, the disposition of Mr. Shell's claim that his rights under the Due Process Clause and Equal Protection Clause were violated rested on an adequate and independent state ground, meaning that this court can't review it.[1]

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. Wainwright v. Sykes, 433 U.S. 72, 90 (1977); Wrinkles v. Buss, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. Murray v. Carrier, 477 U.S. 478, 492 (1986). A habeas petitioner can also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental

---

[1] Mr. Shell also believes that the Indiana Court of Appeals violated his Due Process rights by not deciding this argument on the merits, but Mr. Shell has no constitutional right to post-conviction process. *See* Flores-Ramirez v. Foster, 811 F.3d 861, 866 (7th Cir. 2016).

miscarriage of justice. House v. Bell, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." Schlup v. Delo, 513 U.S. 298, 324 (1995).

Mr. Shell doesn't present any basis for excusing his procedural default on these claims. While not presented as a basis for overcoming procedural default, Mr. Shell argued that his appellate counsel erred by not challenging the admission of the evidence resulting from the stop of the truck and seizure of the pitcher. To the extent that Mr. Shell believes error by his appellate counsel excuses his procedural default, he's wrong. Attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside a procedural default. Coleman v. Thompson, 501 U.S. 722, 753–54 (1991); Wrinkles v. Buss, 537 F.3d 804, 812 (7th Cir. 2008). But as explained later in this order, Mr. Shell's appellate counsel wasn't ineffective for not raising these issues on appeal because they lack merit. This court can't address these grounds on the merits.

## Ineffective Assistance of Counsel Claims

Mr. Shell's ineffective assistance of counsel claims will be addressed on the merits. The provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern Mr. Shell's petition. *See* Lindh v. Murphy, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties

of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Woods v. Donald, 135 S.Ct. 1372, 1376 (2015) (quotation marks and citations omitted).

To prevail on an ineffective assistance of counsel claim in the state courts, Mr. Shell had to show that counsel's performance was deficient, and that the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under

8

*Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). "On habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland* . . . ." McNary v. Lemke, 708 F.3d 905, 914 (7th Cir. 2013). In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* (*citing* Youngblood v. Alvarado, 541 U.S. 652, 664 (2004)). This creates a "doubly deferential" standard of review in cases of this sort. *Id.* "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." McNary v. Lemke, 708 F.3d at 914.

## Trial Counsel

Mr. Shell argues that his trial counsel was ineffective because he failed to impeach[2] three separate witnesses: Joni Espenschied, Officer Josh Maller,[3] and Officer Robert Land.

The court of appeals determined that failure to impeach Ms. Espenschied didn't constitute ineffective assistance of counsel.

> Beginning with Joni Espenschied, Shell contends that trial counsel failed to impeach her testimony during cross-examination by not forcing her to elaborate on her use of methadone. However, the fact that she was intoxicated at the time of the arrest was covered by the prosecutor during direct examination. "[W]ere you doing drugs that night?" Tr. p. 270. "I was under the influence of methadone. It's prescribed to me, but it's a large amount." Id. Given that the jury heard she was under the influence of methadone at the time of the crime, there is not a reasonable probability that the jury would have

---

[2] Mr. Shell also argues that his trial counsel was ineffective because he failed to investigate adequately, but he has waived this argument by not developing it.. (ECF 1 at 3.)

[3] The PCR Court spelled Officer Maller's name as Officer Mailer. This court uses the spelling used in the trial transcript, except when quoting the PCR court.

9

reached a different conclusion had that fact been repeated on cross-examination.

Shell v. State, 43 N.E.3d 272 at *4.

This reflects a reasonable application of the *Strickland* standard. The jury heard that Ms. Espenschied was under the influence of a "large amount" of methadone at the time of Mr. Shell's arrest. The Court of Appeals reasonably determined that there is not a reasonable probability that revisiting this on cross-examination would not have led to a different outcome for Mr. Shell.[4]

The court of pppeals also determined that failure to impeach Officer Josh Maller was not ineffective assistance of counsel.

> Shell next argues that the testimony of Indiana State Police Officer Josh Mailer, one of the officers who participated in the surveillance of the CPS facility and Shell's arrest, gave trial testimony that was inconsistent with other evidence and that trial counsel should have impeached him with the other evidence. Specifically, Officer Mailer testified at trial that the suspect ran "diagonally northeast from the fence directly to the pole described." *Id.* at 222. He further testified at trial that he could not see which side of the truck the suspect got into, he "could just tell that he went up to the cab and entered it." *Id.* at 223. Shell, once again, has failed to demonstrate a reasonable probability that, but for counsel's cross-examination on these two points, he would have been found not guilty. Officer Mailer testified that he saw a person dressed like Shell take the ammonia, run back to the road near the utility pole, and then a truck stopped near that location. Shell was subsequently found in that pick-up truck. He was the only one wearing similar clothing, and he smelled of ammonia. We see no reasonable probability that impeaching either of these details from Officer Mailer's testimony would have changed the verdict.[2]

Shell v. State, 43 N.E.3d 272 at *4.

The court of appeals reasonably applied *Strickland* when it found that, in light of the description of the suspect's clothes, the similarity of Mr. Shell's

---

[4] Mr. Shell appears to concede this point. He indicates in his traverse that he will not address this issue. (ECF 12 at 25.)

clothes to the description, and the strong smell of ammonia coming from Mr. Shell, it wasn't reasonably probable that efforts to impeach Officer Maller regarding the direction the suspect ran or his inability to see him enter the cab of the truck would have had an impact on the outcome of Mr. Shell's trial.

The court of appeals also determined that failure to impeach Officer Land's testimony didn't amount to ineffective assistance of counsel.

> Finally, Shell argues that trial counsel was ineffective because he did not impeach Indiana State Police Sergeant Robert Land's testimony about his distance from the scene by holding a ruler to the scaled picture and forcing Sergeant Land to calculate the distance more precisely. Sergeant Land, who was among the officers assigned to the surveillance of CPS on the night Shell was arrested, testified that he was approximately 150 yards from the anhydrous ammonia facility. *Id.* at 315. Trial counsel had another witness, who worked at CPS, use a ruler to calculate the distance to Officer Land's position and he testified that Officer Land's location was closer to 3500 feet away from the facility. *Id.* at 161. Trial counsel highlighted this discrepancy in his closing argument. *Id.* at 352. Additionally, trial counsel elicited testimony on cross examination of Sergeant Land that he was too far away to see the person who got out of the truck clearly enough to offer a description or identification—whether that distance was 150 yards or 3500 feet. *Id.* at 316. Shell fails to explain how a different presentation of Officer Land's location, or the dispute over the distance of Officer Land's location from the anhydrous ammonia tank, would have led to a different result.

Shell v. State, 43 N.E.3d 272 at *5.

This conclusion also reflects a reasonable application of the *Strickland* standard. The jury knew that there was a discrepancy between Officer Land's estimate of 150 yards and the distance that the other witness measured. The jury knew that, from his location, Officer Land could not describe or identify the suspect. Trial counsel highlighted the discrepancy regarding the distance in his closing argument. The court of appeals reasonably concluded that cross-examination of Officer Land on this issue wouldn't have a reasonably probable impact on the outcome of this case.

11

This court cannot make a probabilistic determination that a reasonable jury would reach a different result if trial counsel had impeached any of these witnesses as Mr. Shell suggests. *See* Whitlock v. Godinez, 51 F.3d 59, 64 (7th Cir. 1995); Holmes v. Hardy, 608 F.3d 963, 968 (7th Cir. 2010) ("troubling" new evidence impugning the credibility of state's witness did not establish actual innocence, since at best it established a "mere possibility" that a jury presented with the evidence would have exonerated the petitioner, "not a probability, as is required.").

Mr. Shell didn't argue in his petition that his trial counsel was ineffective for failure to suppress evidence obtained from the stop of the truck or the seizure of the pitcher, but he raised the argument in his reply brief. (ECF 12 at 17-20.) Even if he had raised the issue in his petition, he wouldn't have prevailed.

The court of appeals concluded that the stop and search of the truck and the seizure of the pitcher were proper. *Id.* The court of appeals found that the stop of the truck was lawful pursuant to Terry v. Ohio, 392 U.S. 1 (1968).

> Here, officers stopped the truck Shell was riding in because, at a little after 1:00 in the morning, several police officers observed a person get out of a truck, run across a field, enter CPS's property, remove anhydrous ammonia from a tank, and return to the road. A short time later, the truck returned and stopped, and it appeared that the person who had taken the anhydrous ammonia reentered the truck. These facts are sufficient to warrant a *Terry* stop of the truck under both the Fourth Amendment and the Indiana Constitution.

Shell v. State, 43 N.E.3d 272 at *4. The pitcher, on the other hand, was abandoned, so it could be seized without a warrant. *Id.* The Indiana Court of Appeals noted that "[n]either the Fourth Amendment nor the Indiana

12

Constitution afford any protection for items abandoned in a public location." *Id.* (citing California v. Hodari D., 499 U.S. 621, 629 (1991); Gooch v. State, 834 N.E. 2d 1052, 1053 (Ind. Ct. App. 2005)). The court of appeals concluded that this argument lacks merit, and counsel cannot be ineffective for failing to raise an issue that lacks merit. This, too, is a reasonable application of *Strickland.*

Mr. Shell argues that these errors demonstrate collectively that his trial counsel was ineffective. "[P]rejudice may be based on the cumulative effect of multiple errors. Although a specific error, standing alone, may be insufficient to undermine the court's confidence in the outcome, multiple errors together may be sufficient." Malone v. Walls, 538 F.3d 744 (7th Cir. 2008). After reviewing the record and considering Mr. Shell's claims of ineffective assistance, this court can't find that the State court's determination regarding cumulative error was objectively unreasonable. The court of appeals noted that "irregularities which standing alone do not amount to error do not gain the stature of reversible error when taken together." Shell v. State, 43 N.E.3d 272 at *5 (quoting Kubsch v. State, 934 N.E.2d 1138, 1154 (Ind. 2010)). The court of appeals then found that there was "no error, cumulative or otherwise, in trial counsel's performance." *Id.* This too is reasonable. This court cannot make a probabilistic determination that a reasonable jury would reach a different result if trial counsel had examined each of these witnesses as Mr. Shell would have liked. *See* Whitlock v. Godinez, 51 F.3d at 64. Since none of counsel's decisions were deficient, it's hard to see how a cumulative streak of instances of effective assistance of counsel could

amount to a ground for relief. The claim regarding cumulative error is not a basis for habeas relief.

## Appellate Counsel

Mr. Shell contends his appellate counsel provided ineffective assistance by not challenging, on appeal, the stop of the truck and seizure of the pitcher. In rejecting this claim, the court of appeals cited the *Strickland* standard. *Shell*, 43 N.E.3d 272 at *5. The court noted that, when challenging whether appellate counsel waived an issue, the court asks two questions. First, whether the issue that was not raised was significant and obvious from the face of the record. And, second, whether that issue is "clearly stronger" than the issue(s) that was/were raised. *Id.* The court of appeals determined that this claim was a derivative of his claim of ineffective assistance of trial counsel on the failure to challenge the admissibility of the evidence. *Id.* As already discussed, the court of appeals determined that both the stop of the truck and seizure of the pitcher were lawful. Thus, the court of appeals concluded that Mr. Shell couldn't show that this issue is "clearly stronger" than the issues raised by appellate counsel.

Mr. Shell hasn't explained how appellate counsel's failure to raise the argument that the search and seizure were unlawful constitutes ineffective assistance of counsel under *Strickland*. Nor has he explained why he believes the court of appeals' decision amounts to an unreasonable adjudication of this issue. This claim doesn't warrant habeas relief. Appellate counsel can't be ineffective for not raising a meritless issue.

CERTIFICATE OF APPEALABILITY

As a final matter, under Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, two of Mr. Shell's claims are procedurally defaulted, and he hasn't offered any meritorious basis for excusing his default. As to his non-defaulted claims, Mr. Shell hasn't made a substantial showing of the denial of a constitutional right, and jurists of reason couldn't debate the outcome of the petition or find a reason to encourage him to proceed further. Accordingly, the court declines to issue Mr. Shell a certificate of appealability.

CONCLUSION

For the reasons set forth above, the court DENIES the petition (ECF 1) and DENIES the petitioner a certificate of appealability.

SO ORDERED on February 5, 2019

/s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT